NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In the Matter of | : | Case No. 10-11360-JHW |
| Robert and Martha J. Burch | : | |
| Debtors | : | **OPINION** |

APPEARANCES:   Nicholas S. Herron, Esq.
Law Offices of Seymour Wasserstrum
205 Landis Avenue
Vineland, New Jersey 08360
Counsel for the Debtors

Keith A. Bonchi, Esq.
Goldenberg, Mackler, Sayegh, Mintz,
Pfeffer, Bonchi & Gill, P.C.
660 New Road, Suite No. 1-A
Northfield, New Jersey 08225
Counsel for Towne Properties, LLC

Isabel C. Balboa, Esq.
Cherry Tree Corporate Center
535 Route 38, Suite 580
Cherry Hill, New Jersey 08002
Chapter 13 Standing Trustee

**FILED**
JAMES J. WALDRON, CLERK

July 15, 2010

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY: Theresa O'Brien, Judicial
Assistant to Chief Judge Wizmur

The Chapter 13 debtors move to modify the interest rate to be paid through their Chapter 13 plan on a claim held by a tax sale certificate holder. The certificate holder, Towne Properties, LLC, contends that it is the holder of a "tax claim" under state law for purposes of 11 U.S.C. § 511, the statute that

-1-

prohibits modification of interest on a "tax claim", and that the rate of interest for its claim must be determined under applicable nonbankruptcy law, i.e. state law.  For the reasons expressed below, the Chapter 13 debtors' motion to reduce the post petition interest rate payable to Towne Properties on its claim as a tax sale certificate holder is granted.  The resolution of the precise rate of interest to be paid on the claim through the debtors' Chapter 13 plan is scheduled for further hearing.

**FACTS AND PROCEDURAL HISTORY**

On January 19, 2010, Robert and Martha J. Burch filed for relief under Chapter 13 of the Bankruptcy Code.  The debtors scheduled their personal residence at 1150 Sharp Road, Vineland, New Jersey, as well as three investment properties also located in Vineland:  68 West Almond Street, 124 West Grape Street and 63-65 West Almond Street.  As is relevant here, the debtors scheduled the 63-65 West Almond Street property as mortgage free and having a fair market value of $50,000.  The debtors also indicated that property taxes in the amount of $25,000 were owed on the property.  The debtors did not include Towne Properties as a creditor on their schedules or provide notice of their bankruptcy filing to them.

Towne Properties, LLC first learned of the debtors' bankruptcy filing from a title search of the property on or about April 12, 2010.  Three years earlier, on October 10, 2007, Towne Properties purchased a tax sale certificate against the debtors' property at 63-65 West Almond Street for $4,156.12, which represented unpaid sewer service charges assessed against the property for the years 2006 and 2007.  The sale was subject to the debtors' right of redemption at the sale price, plus interest at 18%.  The certificate of sale was dated October 22, 2007 and was duly recorded on January 3, 2008 in the Cumberland County clerk's office.

Just over two years later, on January 6, 2010, after the debtors failed to exercise their right of redemption within the two year statutory period, see N.J.S.A. 54:5-54, Towne Properties filed a foreclosure complaint in the New Jersey Superior Court, Chancery Division, Cumberland County, Complaint No. F-2763-10.  Towne Properties claims that it has paid all of the outstanding taxes and sewer charges on the property that accrued since the time that it purchased the tax sale certificate.  Approximately two weeks following the filing of the foreclosure complaint, the debtors filed their Chapter 13 petition.

Towne Properties filed an objection to the debtors' proposed plan on April 23, 2010, claiming that the modified plan fails to address Towne Properties'

interest as a secured creditor and to provide them with the required 18% statutory interest due over the life of the plan. On May 11, 2010, Towne Properties filed a secured proof of claim in the amount of $15,242.49, plus the anticipated post petition interest of 18%, for a total claim of $23,223.60.

In response, on May 25, 2010, the debtors filed this motion to recalculate the proof of claim filed by the defendant. The debtors seek to reduce the post petition interest rate sought by the tax sale certificate holder from 18% to 5%, relying upon Judge Kaplan's recent decision in In re Princeton Office Park, L.P., 423 B.R. 795 (Bankr. D.N.J. 2010) and the United States Supreme Court's decision in Till v. SCS Credit Corp., 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). The debtors assert that section 511 does not proscribe such relief.[1] The tax sale certificate holder contends that the Princeton Office Park decision is "contrary to state law and the plain wording of 11 U.S.C. § 511(a)." Def. Brief at 1.

## DISCUSSION

---

[1] The debtors correctly contend as well that because Towne Properties does not hold a "security interest" in the property, but rather holds a statutory lien, the anti-modification provision governing security interests in the debtor's principal residence does not apply. 11 U.S.C. § 1322(b)(2). Towne Properties does not disagree.

Section 511 provides in relevant part that:

> If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.

11 U.S.C. § 511(a). "The purpose of section 511 is to establish uniformity in the rate of interest paid on deferred tax claims, whether the tax claim is a prepetition claim or an administrative expense claim." 4 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY, ¶ 511.01 at 511-12 (16th ed. 2010). The issue here is whether Towne Properties holds a "tax claim" for purposes of section 511(a).

Recently, Judge Kaplan addressed this same question, albeit in the Chapter 11 context, in his published decision in In re Princeton Office Park, L.P., 423 B.R. 795 (Bankr. D.N.J. 2010). In that case, Plymouth Park Tax Services, LLC was the successful bidder at a sale of municipal tax liens. After the sale, Plymouth Park also paid the taxes that accrued over the next two and one half years on the property. Pursuant to N.J.S.A. 54:4-67, Plymouth Park anticipated an interest rate of 18% on the taxes paid. Following the debtor's Chapter 11 filing, Plymouth Park filed a proof of claim which characterized its claim as "taxes". The debtor's Chapter 11 plan and disclosure statement

provided for an extended payout of the claim at a reduced market interest rate of 6%. The tax sale certificate holder objected, and the debtor moved to fix the claim amount, interest rate and payment terms. The debtor argued that Plymouth Park did not hold a "tax claim" under New Jersey law and therefore it was not entitled to the anti-modification protection afforded by 11 U.S.C. § 511.

Since the Bankruptcy Code does not define the term "tax claim," Judge Kaplan turned to New Jersey state law to determine whether a tax sale certificate purchaser holds a "tax claim" under section 511. Acknowledging that the tax sale certificate holder possesses a lien against the property under state law, he equated the concepts of "lien" and "claim", concluding that liens constitute claims under the Code. Id. at 801. The question then became whether the claim held by the tax sale certificate holder constituted a "tax claim" for purposes of 11 U.S.C. § 511(a).

Judge Kaplan concluded that because the tax sale certificate purchaser pays the delinquent taxes to the municipality in exchange for receiving the tax sale certificate, the taxes have been paid. Therefore, the purchaser receives only a statutory lien and not a tax lien. Referencing section 724(b), the court noted that it was "palpably clear . . . that in order for a creditor to hold a 'tax

lien,' the holder must first possess an allowed claim for 'a tax.'" Id. at 801.  The tax sale certificate holder could

> not possess an allowed claim for taxes, as it is undisputed that the underlying taxes owing to the Township have been paid and that Plymouth Park is not empowered to assess or collect taxes.  What Plymouth Park does hold is a statutory lien which may be satisfied by payment of the sum paid for the tax sale certificate with a redemption rate of interest fixed by statute.

Id.

Judge Kaplan cited several additional bases to support his conclusion that the purchaser of a tax sales certificate does not hold a "tax claim" within the meaning of section 511.  First, Judge Kaplan explained that the holder of a tax sales certificate enjoys significantly different rights than a municipality holding a tax claim.  Id. at 804.  For example, whereas the municipality's future claims for unpaid taxes constitute a continuous lien on the land, the tax sale certificate holder's lien is subject to subsequent liens by the municipality. Id. (citing Jefferson Twp. v. Block 447A, Lot 10, 228 N.J. Super. 1, 5, 548 A.2d 521, 522 (App. Div. 1988)).  Moreover, unlike the municipality, the holder's lien is subject to a subsequent tax sales certificate.  Id. (citing Lato v. Rockaway Twp., 16 N.J. Tax 355, 363 (N.J. Tax Ct. 1997)).  Second, he noted that under the New Jersey Tax Sale statute, the property owner may redeem the tax sale certificate not by paying a "tax", but rather by paying "the sum paid at the sale,

with interest at the rate of redemption for which the property was sold." Id. (quoting N.J.S.A. 54:5-58 (West 2010)). Third, he observed that unlike a municipality's tax claim, which need not be recorded, the holder's tax sale certificate must be recorded to constitute a valid lien on the property. Id. at 805 (citing N.J.S.A. 54:5-51 (West 2010)). For these reasons, Judge Kaplan concluded that "the purchaser of a tax sale certificate acquires a statutory lien claim, not a tax claim, and is therefore not entitled to the protection of § 511(a)." Id. at 806.

Upon review of the relevant statutes and case law, I agree with Judge Kaplan's decision in Princeton Office Park. In New Jersey, as a general matter, the procedures for the sale of tax sale certificates "[we]re designed to provide a mechanism for municipalities to collect real estate taxes when the owners do not pay them voluntarily." I.E.'s, L.L.C. v. Simmons, 392 N.J. Super. 520, 527, 921 A.2d 483, 487 (Law Div. 2006). The Simmons court outlined the tax sale certificate process as follows:

> Under New Jersey law, unpaid municipal property taxes become a lien on the real property. N.J.S.A. 54:5-6. If the taxes remain unpaid by the 11th day of the eleventh month of the municipality's fiscal year, the municipality may sell to a third party at a tax sale its lien in the form of a tax sale certificate. N.J.S.A. 54:5-19. In exchange for the tax sale certificate, the municipality receives the amount of the taxes owed plus interest and costs of the sale. N.J.S.A. 54:5-31.

Id. at 528, 921 A.2d at 487.

> The purchaser of the tax sale certificate benefits from the purchase in one of two ways. The purchaser may receive payment from the owners if the owners redeem the certificate. Specifically, in order to redeem the certificate, the property owners must pay the purchaser the cost of the tax sale certificate plus interest, costs, and any subsequent municipal liens paid by the purchaser. N.J.S.A. 54:5-58. In the alternative, if the property is not redeemed, the purchaser will own the property. The purchaser secures ownership by filing an in personam foreclosure action to bar the right of redemption. N.J.S.A. 54:5-86. The action may be commenced if the certificate is not redeemed within two years of the tax sale. Ibid. (When the municipality is the purchaser, this time period is six months. Ibid.) While the right of redemption continues while the action is pending, it will be barred upon entry of a final judgment. Ibid. Once the right of redemption is barred, the purchaser owns the property, obtaining an absolute and indefeasible estate of inheritance fee simple in the property. N.J.S.A. 54:5-87.

Id.

Thus, under the New Jersey Tax Sale statute, the municipality receives full payment for its outstanding taxes, and the purchaser receives a lien securing the amount paid plus interest. The lien secures the obligation of the property owner to repay the purchaser, but the tax debt has been satisfied. See, e.g., Simon v. Cronecker, 189 N.J. 304, 319, 915 A.2d 489, 497 (2007) ("The successful bidder on a tax sale certificate agrees to pay to the municipality the taxes or assessments due on the property."); Crusader Serv. Corp. v. City of Wildwood, 345 N.J. Super. 456, 464, 785 A.2d 484, 489 (Law Div. 2001) ("It is obvious that, when the City receives tax payments from

whatever source, their interest is satisfied."). The homeowner is afforded a two year opportunity to redeem the tax sale certificate before a foreclosure complaint may be filed. N.J.S.A. 54:5-54. To redeem, the homeowner must reimburse the purchaser for the amount paid by the tax sale certificate holder to satisfy the homeowner's tax debt, plus any accrued interest. N.J.S.A. 54:5-58-60. The tax sale certificate holder stands in the shoes of the municipality with respect to its position as a lien holder. It has certain statutory collection rights. Varsolona v. Breen Capital Servs. Corp., 180 N.J. 605, 618, 853 A.2d 865, 873 (2004)("The certificate vests the purchaser with an inchoate right or interest and gives the purchaser the right to foreclose the equity of redemption pursuant to the statutory scheme.") It does not have the right to collect taxes on behalf of the municipality. It only has the right to reimbursement of the monies that it paid on behalf of the homeowner. As the tax court in Ramos v. City of Passaic remarked,

> it is the sale of the certificate, not the redemption of the certificate, which results in payment to the municipality of the delinquent taxes for which the sale took place. Indeed, the very purpose of the sale is to obtain payment of those taxes. Redemption of the certificate will not result in the receipt by the municipality of any revenue.

19 N.J. Tax 97, 112-13 (N.J. Tax Ct. 2000). The conclusion is inescapable that upon the purchase of a tax sale certificate, the municipality's tax claim is extinguished, leaving only a redeemable debt due from the property owner to

the purchaser, which is secured by a lien on the property.

Towne Properties offers various arguments to refute this conclusion. The respondent correctly notes that the legislative history of section 511 reflects that the section was included in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 to address the lack of uniformity in cases around the country on the rate of interest applicable to tax claims. Section 511 was enacted

> for the purpose of simplifying the interest rate calculation. It provides that for all tax claims (federal, state and local), including administrative expense taxes, the interest rate shall be determined in accordance with applicable nonbankruptcy law.

H.R. Rep. No. 109-31, at 101 (2005). As well, the respondent is correct that the use of the broad term "creditor" in the statute confirms that the provision is not limited to governmental units. In re Cortner, 400 B.R. 608, 613 (Bank. S.D. Ohio 2009). However, these contentions do not succeed to offer Towne Properties section 511 protection here. The purpose of the statute – to protect the interest rate on tax claims from modification – cannot be effected where the creditor does not hold a tax claim. Towne Properties is not precluded from relying on section 511 to protect its interest rate from modification because it is not a governmental unit. It is precluded because it does not hold a tax claim under New Jersey law.

The respondent next contends that because the purchaser of a tax sale certificate in New Jersey succeeds to the lien interest of the municipality and is entitled to the same rights that a municipality could exercise, including the right to foreclose, the private lienholder stands in the shoes of the municipality and holds a tax claim for purposes of section 511.  The respondent references three New Jersey statutes, including N.J.S.A. 54:5-42, -13 and -113, to support this contention.  Again, this argument must fail. As noted above, in In re Princeton Office Park, supra, 423 B.R. at 804-05, Judge Kaplan addressed various differences between the nature of a tax lien held by a municipality versus a lien held by a tax sale certificate holder.  For example, a municipality's future claims for unpaid taxes constitute "a continuous lien on the land", N.J.S.A. 54:5-6, whereas the lien held by the tax sale certificate holder is subject to subsequent liens by the municipality.  Id. at 804.  Unlike the municipality, the holder's lien is subject to subsequent tax sale certificates.  Id.  As well, a tax sale certificate must be recorded in the county records to constitute a valid lien on the property, whereas a municipal lien need not be recorded.  Id. at 805.

The statutory references relied upon by the respondent to buttress its contention that the purchaser, as successor in interest to the municipal lien, also holds a tax claim, do not support its position.  N.J.S.A. 54:5-42 provides

that "[w]hen a sale is made in the enforcement of a municipal lien, the lien shall pass, with the title, to the purchaser, and if the sale shall be set aside for defect in the proceedings to sell, the lien shall be thereby continued." Towne Properties cites to this statute to establish that a municipal lien retains its character as a municipal lien even when it passes to a tax sale certificate purchaser, thereby also retaining its character as a tax claim. A similar argument was rejected by the New Jersey Tax Court in a different context. Freehold Office Park, Ltd. v. Freehold Twp., 12 N.J. Tax 433, 441 (N.J. Tax Ct. 1992). In Freehold Office Park, the township sought to dismiss a property tax appeal on the ground that a requirement for litigating the appeal – that taxes must be paid – had not been met. The township contended that the taxes had not been paid even though a tax sale certificate had been sold, maintaining that the lien for unpaid taxes was simply reassigned to the purchaser of the tax sale certificate. If the sale was set aside, the lien would revert to the municipality. Id. at 438. The Tax Court disagreed, finding "that the municipality has, in fact, received its tax revenues from the assessment placed on the subject property." Id. at 441. If the tax sale is set aside, N.J.S.A. 54:5-43 requires that the person seeking to set it aside pay the amount due to the municipality on behalf of the tax sale certificate holder. The lien would be reimposed for the benefit of the municipality. While the municipal lien can be reassigned, the tax claim is satisfied upon payment of the taxes, either by the

-13-

purchaser of the tax sale certificate holder or by the person who succeeds in setting aside the tax sale.

N.J.S.A. 54:5-13 provides in relevant part that in response to a search for tax liens, a municipal official shall provide:

> a statement of all municipal liens and outstanding certificates of tax sale, whether held by the municipality or not, made at any time prior to the date of its certification and not redeemed at such date as shown on the records of the municipality, and in the case of a continuation search shall indicate whether the liens, if any, shown in the original certificate shall have been paid and satisfied or remain in force.

The respondent contends that by this provision, the state legislature explicitly envisioned that an entity other than a municipality may hold a municipal lien. That is certainly true. But it does not follow that a holder of a municipal lien also holds a tax claim. The purpose of N.J.S.A. 54:5-13 is simply to ensure that all liens held against the property are disclosed. See Simon v. Nat'l Cmty. Bank of N.J., 282 N.J. Super. 447, 452, 660 A.2d 558, 560 (App. Div. 1995) ("The legislative intent underlying th[is] section[] is to provide for a certification of the 'existence or absence of outstanding municipal liens prior to the consummation of a real property transaction,' so the prospective purchaser can proceed with safety."). The inclusive nature of the provision does not alter the basic premise that the underlying tax claim has been paid and is therefore

-14-

extinguished.

>    N.J.S.A. 54:5-113 provides in relevant part that:

>    When a municipality has or shall have acquired title to real estate by reason of its having been struck off and sold to the municipality at a sale for delinquent taxes and assessments, the governing body thereof may by resolution authorize a private sale of the certificate of tax sale therefor, together with subsequent liens thereon, for not less than the amount of liens charged against such real estate. The sale shall be made by assignment executed by such officers as may be designated in the resolution.

The respondent contends that when a municipality assigns its lien to a private lienholder under N.J.S.A. 54:5-113, the underlying tax obligation is not satisfied, and it remains a tax claim. We need not decide here whether a tax claim held by a municipality who has acquired title to real estate at a sale for delinquent taxes remains a tax claim after assignment. That is not the situation here, where the respondent did not receive a direct assignment from the municipality, but rather was the successful bidder at an auction for a tax sale certificate.

In further support of the proposition that a tax sale certificate holder is a "municipal lienholder", and that a tax sale certificate is equivalent to a municipal tax lien, Towne Properties directs our attention to <u>Caput Mortuum, LLC v. S&S Crown Services, Ltd.</u>, 366 N.J. Super. 323, 337, 841 A.2d 430, 438

(App. Div. 2004) and In re Pryor, 366 N.J. Super. 545, 555, 841 A.2d 943, 948 (App. Div. 2004). Neither of these cases is helpful to the respondent. In Caput Mortuum, the court described the tax sale law as a means for "[m]unicipalities [to] sell tax certificates to generate funds owed by delinquent taxpayers," and as a means to "encourage parties to purchase tax liens to enable municipalities to receive their lost tax revenues," 366 N.J. Super. at 335, 841 A.2d at 437. It is another way for the municipality to "realize taxes." Id. at 336, 841 A.2d at 438. In Pryor, the court determined the priority of liens in connection with a decedent's estate, equating tax sale certificates with municipal tax liens for purposes of lien priority. But the court did not disturb the premise that the tax sale certificate holder paid the municipal taxes due to acquire the lien.

As Judge Kaplan also concluded, the respondent's reliance on case law from Ohio and Texas must be rejected, because the relevant statutes in Ohio and Texas are distinguishable in their tax sale processes from those in New Jersey. The court explained in In re Cortner, 400 B.R. 608, 612-13 (Bankr. S.D.Ohio 2009) that "[t]he last sentence of ORC § 5721.32(E) refers to both a transfer of the taxes and the 'superior lien of the state' to the certificate holder. . . . Unlike other jurisdictions which have statutes to allow state entities to recoup delinquent real estate taxes, it is not only the lien that is being transferred, but the amount owed for delinquent taxes." The Ohio statute

provides that "'[u]pon issuing a tax certificate, the delinquent taxes that make up the certificate purchase price are transferred, and the superior lien of the state and its taxing districts for those delinquent taxes is conveyed intact to the certificate holder.'" Id. at 613 n.8 (quoting ORC § 5721.32(E) (emphasis omitted)). The equivalent statutory language simply does not exist under New Jersey law.

In Texas, a tax lien arises to secure the payment of all taxes, interest and penalties assessed against a particular property.[2] TEX. TAX CODE ANN. §

---

[2] Under Texas law, there is also an alternate method of obtaining a tax lien. In In re Vasquez, No 09-20565, 2010 WL 934210 (Bankr. S.D.Tex. Mar. 10, 2010), the lien holder obtained its interest by assignment from a governmental agency. "In Texas, when a party receives a transfer of a tax lien from a governmental entity, it is subrogated to the rights of the taxing unit." Id. at *1 (citing TEX. TAX CODE ANN. § 32.065(c)). Texas Tax Code § 32.065(c) provides that:

> Notwithstanding any other provision of this code, a transferee of a tax lien or the transferee's assignee is subrogated to and is entitled to exercise any right or remedy possessed by the transferring taxing unit, including or related to foreclosure or judicial sale, but is prohibited from exercising a remedy of foreclosure or judicial sale where the transferring taxing unit would be prohibited from foreclosure or judicial sale.

Because an assignment of a tax lien is legally distinct from a sale of municipal lien, Vasquez is not relevant to this discussion. The defendant's reliance upon the district court decision in Tax Ease Funding, LP v. Kizzee-Jordan, No. H-09-333, 2009 WL 3186727 (S.D.Tex. Sep. 28, 2009) is equally inapplicable, because the court relies upon the same state code sections. Neither Vasquez nor Tax Ease can be said to have reversed or overruled In re Sheffield, 390 B.R. 302 (Bankr. S.D.Tex. 2008) or In re Soto, 410 B.R. 761 (Bankr. S.D.Tex. 2009),

32.01(a). The property owner may authorize another party to pay the taxes imposed on its behalf. Id. at § 32.06(a-1). When the taxes are paid, the tax collector certifies that the taxes have been paid and that the tax lien is "transferred to the person who pays the taxes on behalf of the property owner." Id. at (a-2). In In re Sheffield, 390 B.R. at 303-04, the plaintiff paid the taxes on the debtor's property in exchange for an assignment of the taxing authority's tax liens. The debtor executed a promissory note in the plaintiff's favor. The court allowed the debtor to reduce the interest rate on the note, concluding that the plaintiff had already paid the taxes and thus "did not purchase the taxing unit's claim." Id. at 306. Similarly, in In re Soto, 410 B.R. at 764, the court explained that:

> The issue here is not whether the Texas tax lien creates an imposition against the property. The issue is what the imposition secures. Does the tax lien secure a tax claim or does it secure a garden variety claim? If the underlying debt secured by the tax lien was paid prior to bankruptcy (but the lien was not yet officially released), there would not be an argument that the tax lien was a tax claim. The tax lien would be an imposition that secured no remaining claim. Accordingly, the Court must determine what the tax lien secures. In this instance (as in Sheffield), the tax lien cannot secure an already-paid tax claim. Instead, the tax lien, by operation of Texas law, secures a garden variety promissory note executed by the debtor and payable to the movant. The tax lien cannot secure payment of the already-extinguished tax claim.

It is interesting to note that under Texas law, even though the creditor's "liens

---

discussed infra.

are called 'tax liens' by § 32.06," that "does not render the claims secured by the liens tax claims under § 511. The tax lien secures the claim, but it does not transform the non-tax claim into a tax claim. As the Court discussed in Sheffield, a claim is defined by the underlying nature of the debt." Id.

Finally, I must reject the respondent's resort to public policy arguments. The respondent argues vigorously that not affording interest rate reduction protection to private holders of tax sale certificates will chill participation in the tax sale market and have a devastating effect on municipal tax collection. If investors do not purchase tax sale certificates and foreclose on the subject properties, respondent argues, properties will remain delinquent in taxes and municipalities will have decreased revenue. These are significant concerns. However, the concerns must be directed to the New Jersey legislature. Under the current New Jersey Tax Sale structure, the purchaser of a tax sale certificate does not purchase a tax claim. It is not within the province of this court to allow policy arguments to determine the outcome of an issue that is resolved by enacted statute.

I conclude that the debtor's motion to modify the interest rate to be paid on the claim of Towne Properties, LLC. is granted.

Having ruled that the respondent is not entitled to the interest rate it would have received under New Jersey law, as prescribed by § 511(a), the court must determine the appropriate interest rate to be charged on the respondent's lien. The formula approach adopted by a plurality in Till, 541 U.S. at 465, 124 S.Ct. at 1951, governs the calculation of the interest rate to be applied to respondent's claim. The rate of interest will be set by using the national prime rate as the starting point with additional interest points added to account for nonpayment risk. Because the parties did not focus their attention on the factors to be considered in setting the appropriate interest rate in this case, a hearing is scheduled for Tuesday, August 17, 2010 at 2:00 p.m. to resolve this issue. The entry of an order reflecting this ruling may await the final resolution of the motion.

Dated:  July 15, 2010

                                                JUDITH H. WIZMUR
                                                CHIEF JUDGE
                                                U.S. BANKRUPTCY COURT